The Chancellor.
It appears by the testimony, more particularly by that of Aaron Armstrong, that, some months before the alleged act of adultery charged in the bill, the complainant had left his wife’s bed or had driven her from his, and had declared that he would not live with his wife. She occupied a different bedroom from that in which he slept. He had taken other measures which showed Ms determination to get rid of her. This state of things has its influence in examining the proof of the alleged act of adultery, and in considering what weight it is entitled to. The testimony shews, that the wife was fully apprised of the complainant’s desire to get rid of her, and that she was desirous that the difficulties between them should be accommodated, and desirous to remain with Mm as Ms wife.
The testimony as to the act of adultery is certainly of a very extraordinary character, not to say marvellous. The facts from *510 which we are asked to infer adultery are sworn to by a single witness only.
This witness says she stayed all night at the complainant’s house; that she went to the door of the room in which the wife slept that night, the night on which the adultery is alleged to have been committed, at about midnight; that it was a moonlight night; that the door was open so that she could see the bed, and that she saw the person with whom the adultery is alleged to have been committed in bed with the wife. That the husband had gone to New York the day before, and did not return until the next day, i. e. the day succeeding the night on which the adultery is alleged, to have been committed. How the witness knows when the husband did return we are not told. She says that when she went to bed she left the person with whom the adultery is said to have been committed down stairs in the sitting room. That after she went to bed she heard him come up stairs. How she knew it was he who came up stairs we are not told.
The testimony has failed to impress my mind with a belief that on that night, and under the circumstances in which the wife then stood, any adulterous intercourse with her took place. It is much more credible to my mind, that certain arrangements had been previously made for the purpose of getting up evidence of adultery in the wife. And it is very easy to perceive how this might have been done, and this witness herself imposed upon.
I do not feel justified in decreeing a divorce for adultery on such proof.
Divorce denied.